IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEO POU SAECHAO, | No. C 06-6112 WHA (PR) |
| Petitioner, | **DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| JAMES E. TILTON, Acting Secretary, Department of Corrections and Rehabilitation, and DAVID L. RUNNELS, Warden, | |
| Respondents. / | |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. For the reasons set forth below the petition is **DENIED**.

**STATEMENT**

An Alameda County jury convicted petitioner of attempted willful, deliberate, premeditated murder, *see* Cal. Penal Code 187(a), 664(a); two counts of assault with a firearm, *see id.* 245(a)(2); and shooting at an inhabited dwelling/occupied building, *see id.* 246 (Exh. 7 [Opinion of California Court of Appeal] at 1, 8).[1] The jury also found true the allegations of

---

[1] Citations to "Exh." are to the exhibits lodged by respondents in support of the answer.

personal firearm use and discharge, *see* Cal. Penal Code 12022.53(b)-(d); 12022.5(a)(1), and criminal street gang participation, *see id.* 186.22(b)(1) (Exh. 7 at 1, 8). Petitioner was sentenced to state prison for fifty-six years and four months (*id.* at 8).

As the California Court of Appeal noted, "[t]he evidence adduced at trial was wildly conflicting, with percipient witnesses contradicting each other and themselves" (*id.* at 2). Summarizing the evidence briefly in a light most favorable to the verdict, the victim, nicknamed "Scooby," a member of a Richmond street gang called "Sons of Death" (SOD), went with friends to a Mien cultural festival in Oakland (*ibid.*). Petitioner, a member or former member of the Oakland Mien Crips, approached the group and asked if they were gang members; Scooby said yes, and petitioner suggested they go outside (*id.* at 2-6). Later Scooby and some friends did go outside, where petitioner shot him in the neck, then fired several other shots, including two through the glass doors of the building (*ibid.*). Scooby was in the hospital for two months and suffered brain damage (*id.* at 2). Petitioner's defense was the others drew on him first, that he fired in self-defense, and that none of his shots were into the building (*id.* at 6-7).

## DISCUSSION

### A.   STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached

by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Ibid.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his rights were violated when the trial court refused to allow certain impeachment questions of key witnesses; (2) his counsel was ineffective in failing to discover the exculpatory evidence; (3) his counsel was

3

1  ineffective in failing to investigate and discover the arrest of a prosecution witness, which
2  would have revealed useful impeachment evidence; (4) his counsel was ineffective in not
3  moving to exclude a statement he gave without *Miranda* warnings and without counsel; (5)
4  counsel was ineffective at trial in failing to elicit certain testimony and in not objecting to
5  certain testimony; (6) counsel was ineffective in closing argument; (7) the prosecutor failed to
6  reveal exculpatory evidence; (8) the trial court violated his due process and jury trial rights by
7  not defining certain terms in the jury instructions; (9) the trial court violated his due process and
8  jury trial rights by misinstructing the jury regarding predicate offenses for the gang
9  enhancements; and (10) the evidence was insufficient to support the gang enhancements.  The
10 ineffective assistance issues will be grouped for discussion at the end of this ruling.

**1.     Impeachment**

Petitioner contends that the trial court's restrictions on his cross-examination of certain witnesses violated his Confrontation Clause rights and his due process right to put on a defense. The court allowed one witness to be impeached with two juvenile burglary convictions, but declined to allow two other witnesses, including the victim Scooby, to be impeached with their juvenile records.

The juvenile record of one witness, John, showed that a petition had been filed against him alleging auto theft, "disposition unknown," and that he had been arrested for burglary, "closed at intake."  The court excluded both under California Evidence Code Section 352, which permits exclusion of evidence if the probative value of the evidence is outweighed by "the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  The court said that it would not have permitted use of the auto theft charge even if the disposition were known, because it did not "bear significantly" on issues in the case; as to the burglary, the court thought it was not admissible under California law without a disposition, and that it was not worth the consumption of time because there was no documentation (Exh. 7 at 19-20).

As to victim Scooby, the trial court excluded his juvenile record of auto theft and receiving stolen property on California Evidence Code Section 352 grounds, saying that

because Scooby did not remember the shooting, and admitted his gang membership, there was not "much testimony out there to impeach" (i*d.* at 20).

As to petitioner's federal constitutional claim, the court of appeal said only that "[o]ur Supreme Court has repeatedly rejected such constitutional claims," and cited several cases (*id.* at 20). It then declined to rule on whether the trial court had abused its discretion under California law with its California Evidence Code Section 352 holding, finding instead that there was no prejudice (*ibid.*).

The issue is whether the exclusions, though they were not reversible error under California law, violated due process or petitioner's rights under the Confrontation Clause. *See Holmes v. South Carolina*, 547 U.S. 319, 1731 (2006) (although state lawmakers have "broad latitude" to establish rules excluding evidence in criminal trials, that latitude has constitutional limits).

Regardless of the amendment in which the right to a defense is grounded, the analysis is the same. *Ibid.* (whether right is rooted in the Due Process Clause of the Fourteenth Amendment or Compulsory Process Clause or Confrontation Clause, Constitution guarantees meaningful opportunity to present defense, which is abridged by state evidence rules that infringe on weighty interest of accused and are arbitrary or disproportionate to their purposes); *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986) (right to present a defense may be rooted in the Fourteenth Amendment's Due Process Clause or in the Sixth Amendment's confrontation or compulsory process clauses); *see also Rock v. Arkansas*, 483 U.S. 44, 56-62 (1987) (right to testify arising from the Fourteenth Amendment's due process clause, Sixth Amendment's Compulsory Process Clause, and Fifth Amendment's right not to be compelled to testify). The Ninth Circuit has summarized the rule as "states may not impede a defendant's right to put on a defense by imposing mechanistic (*Chambers*) or arbitrary (*Washington* and *Rock*) rules of evidence." *LaGrand v. Stewart*, 133 F.3d 1253, 1266 (9th Cir. 1998) (referring to *Chambers v. Mississippi*, 410 U.S. 284 (1973) (due process case); *Washington v. Texas*, 388 U.S. 14 (1967) (due process case); and *Rock v. Arkansas*, 483 U.S. 44 (1987) (due process, compulsory process, Fifth Amendment's right not to testify).

Regardless, then, of whether the claim is considered under the Due Process Clause or the Confrontation Clause, the analysis is similar: is the California evidentiary rule as applied here unreasonable, arbitrary or disproportionate to the purpose it is intended to serve?

In *Perry v. Rushden*, 713 F.2d 1447 (9th Cir. 1983), the court recognized that serious weight must be accorded the state's interest in not wasting trial time on collateral matters and in excluding unreliable or "prejudicial" evidence. *Id.* at 1452. This interest is important in every case, whereas the interest of the defendant in performing the proffered cross-examination will vary from case to case. In this case that interest is slight. In the absence of an adjudication of the offenses and with no details of them, their impeachment value, and thus their value in uncovering the truth, was minimal; their reliability, in the sense of being useful to show that the witnesses actually committed the crimes with which they were charged, also was minimal.

The trial court's application of the California evidentiary rule to exclude evidence of the juvenile changes therefore was not unreasonable, arbitrary or disproportionate to the purpose the rule is intended to serve, and so did not violate petitioner's rights. Consequently, the state appellate courts' rejections of this claim were not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

**2.     Jury Instructions**

California Penal Code Section 186.22(b)(1) imposes a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gag, with the specific intent to promote, further, or assist in any criminal conduct by gang members." The term "criminal street gang" is defined as "any ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e) . . . and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." Cal. Penal Code 186.22(f) (2001).[2]

---

[2] The criminal acts listed in paragraphs (1) to (25) of the version of California Penal Code Section 186.22(e) that was in effect at the time of petitioner's offense were:

6

Pursuant to these statutes, the trial court instructed the jury that for purposes of the charged gang enhancement, the definition of a "criminal street gang" was:

> any ongoing organization, association or group . . . having as one of its primary activities the commission or attempted commission of one or more of the following offenses: 1. Assault with a deadly weapon or by means of force likely to produce great bodily injury . . . 2. Unlawful homicide or manslaughter . . . 3. Shooting at an occupied building . . . 4. Burglary.

(Exh. 2 [Clerk's Transcript] at 418-19).

///

---

(1) Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245.
(2) Robbery, as defined in Chapter 4 (commencing with Section 211) of Title 8 of Part 1.
(3) Unlawful homicide or manslaughter, as defined in Chapter 1 (commencing with Section 187) of Title 8 of Part 1.
(4) The sale, possession for sale, transportation, manufacture, offer for sale, or offer to manufacture controlled substances as defined in Sections 11054, 11055, 11056, 11057, and 11058 of the Health and Safety Code.
(5) Shooting at an inhabited dwelling or occupied motor vehicle, as defined in Section 246.
(6) Discharging or permitting the discharge of a firearm from a motor vehicle, as defined in subdivisions (a) and (b) of Section 12034.
(7) Arson, as defined in Chapter 1 (commencing with Section 450) of Title 13.
(8) The intimidation of witnesses and victims, as defined in Section 136.1.
(9) Grand theft, as defined in subdivisions (a) or (c) of Section 487.
(10) Grand theft of any firearm, vehicle, trailer, or vessel.
(11) Burglary, as defined in Section 459.
(12) Rape, as defined in Section 261.
(13) Looting, as defined in Section 463.
(14) Moneylaundering, [FN1] as defined in Section 186.10.
(15) Kidnapping, as defined in Section 207.
(16) Mayhem, as defined in Section 203.
(17) Aggravated mayhem, as defined in Section 205.
(18) Torture, as defined in Section 206.
(19) Felony extortion, as defined in Sections 518 and 520.
(20) Felony vandalism, as defined in paragraph (1) of subdivision (b) of Section 594.
(21) Carjacking, as defined in Section 215.
(22) The sale, delivery, or transfer of a firearm, as defined in Section 12072.
(23) Possession of a pistol, revolver, or other firearm capable of being concealed upon the person in violation of paragraph (1) of subdivision (a) of Section 12101.
(24) Threats to commit crimes resulting in death or great bodily injury, as defined in Section 422.
(25) Theft and unlawful taking or driving of a vehicle, as defined in Section 10851 of the Vehicle Code.

7

1    Petitioner claims that the jury instructions regarding the sentence enhancement for
2 acting in furtherance of a gang violated his due process and jury trial rights (1) because they did
3 not contain a definition of the term "primary activity" and (2) because they did not properly
4 identify the predicate offenses that qualify as gang activity.

### a.   Failure to Give Instruction

Petitioner argues that the trial court had a duty to give an instruction *sua sponte* defining the term "primary activities." A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *Ibid.* The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *Walker v. Endell*, 850 F.2d at 475-76 (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155).

The California Court of Appeal held that the term "primary activities" in California Penal Code Section 186.22(f) is not a "technical" term and that its meaning does not differ from it's "commonly understood" or "nonlegal" meaning (Exh. 7 at 13 (internal quotation marks omitted)). In other words, as a matter of state law, the term "primary activities" means the gang's "chief" or "principal" activities (*ibid.*). This interpretation of California law is binding on habeas review. *See Hicks v. Feiock*, 485 U.S. 624, 629-30 n.3 (1988) (intermediate state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds federal court sitting in habeas corpus).

Because under California law the term "primary activities" is given its common meaning, and the term is not obscure, the trial court's failure to define it could not have so poisoned the proceedings as to deprive petitioner of his right to a fair trial. Petitioner's due process rights thus were not violated, and in the absence of any constitutional violation, the rejection of this claim by the state appellate courts could not have been contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### b. Error in Instruction

Petitioner also claims that the instruction violated his due process rights in that it said that one of the "primary activities" of a street gang could be shooting at an occupied building. The statute, California Penal Code Section 186.22, lists shooting at an "inhabited dwelling" as one of the triggering primary activities of a street gang, but does not include shooting at an "occupied building."

The California Court of Appeal agreed that the instruction misstated state law in this regard, but determined that the error was harmless (Exh. 7 at 13-15). If a state court disposes of a constitutional error as harmless under an appropriate standard of review, federal courts must, for purposes of application of the "unreasonable application" clause of § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively unreasonable. *Medina v. Hornung*, 386 F.3d 872, 878 (9th Cir. 2004); *see, e.g., Campbell v. Rice*, 408 F.3d at 1173 (determining that state court's harmlessness holding was not unreasonable and proceeding no further). If the federal court determines that the state court's harmless error analysis was objectively unreasonable, and thus an unreasonable application of clearly established federal law, the federal court then proceeds to determine if the error was harmless under the federal harmless error standard for habeas review, which is that set out in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (habeas petitioner not entitled to relief unless trial error had substantial and injurious effect or influence in determining the jury's verdict.). *Medina*, 386 F.3d at 877.

Here, the state court used the appropriate standard of review, that set out in *Chapman v. California*, 386 U.S. 18, 24 (1967) (on direct appeal, federal constitutional error is harmless only if it was harmless beyond a reasonable doubt.). *See Brecht*, 507 U.S. at 630-31, 636 (confirming that *Chapman* supplies the correct standard for state court direct review of constitutional error). The question then is whether the state court's conclusion applying that standard was reasonable.

As the court of appeal pointed out, the only evidence of the primary activities of the gang was given by a police gang expert, and although she listed a number of primary activities of the gang, she did not include in those activities shooting at an occupied building (Exh. 7 at

9

13-14). Because there was no evidence that the gang's activities included shooting at occupied buildings, it was reasonable for the court of appeal to conclude that the error in the jury instruction was harmless under *Chapman*. For the same reason, the error could not have had a substantial and injurious effect or influence in determining the jury's verdict. That is, even if there was constitutional error, the error was harmless under the *Brecht* standard applied by federal courts to habeas claims of this sort.

The rejections of this claim by the state appellate courts were not contrary to, or unreasonable applications of, clearly established United States Supreme Court authority.

### 4. Sufficiency of the Evidence

Petitioner's sentence was enhanced by a total of fourteen years and four months because it was committed for the benefit of or in association with a criminal street gang (Exh. 7 at 8 n.7). As discussed above, a "criminal street gang" is defined as "any ongoing organization, association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e) . . . and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." Cal. Penal Code 186.22(f) (2001). Petitioner contends that there was insufficient evidence that the "primary activities" of the gang included one or more of those listed.[3]

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324.

///

---

[3] The "primary activities" list from the statute as it was in 2001 is set out in footnote 2, above.

10

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Jackson*, 443 U.S. at 324 (granting writ where, after resolving all conflicting factual inferences in favor of prosecution, only speculation supported petitioner's conviction for first degree murder under a theory of aiding and abetting).

After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. 2254(d)). Section 2254(d)(1) plainly applies to *Jackson* cases; that is, if the state court affirms a conviction under *Jackson*, the federal court must decide whether the state court's application of *Jackson* was objectively unreasonable. *Sarausad v. Porter*, 479 F.3d 671, 677-78 (9th Cir. 2007).

This is the court of appeal's discussion of this issue:

> Officer Chan testified as an expert witness on ACE's primary activities. . .
>
> Expert testimony can furnish sufficient proof of a gang's primary activities. ( *Sengpadychith*, *supra*, 26 Cal.4th at p. 324.) In *Gardeley*, *supra*, 14 Cal.4th at page 620, for example, the "gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on 'his personal investigations of hundreds of crimes committed by gang members,' together with information from colleagues in his own police department and other law enforcement agencies. [Citation.]" (*Sengpadychith*, *supra*, at p. 324, 109 Cal.Rptr.2d 851, 27 P.3d 739.)
>
> In this case, Officer Chan testified he had been an Oakland police officer for almost ten years-five years on patrol, then in the crime prevention unit, then the gang unit, where he specialized in Asian gangs in Oakland. He had received both formal and on-the-job training, and trained other officers as well. He had personally spoken to at least 50 Asian gang members and arrested at least 40. He had been qualified as an expert in the culture, habits, trends and customs of Asian gangs in Oakland at the preliminary hearing in this case. Cheo Pou did not challenge the trial court's finding that Chan qualified as an expert in the

11

>investigation of gang-related crime, specifically involving Asian gangs in Oakland.
>
>Chan further testified he had patrolled areas ACE frequented for nearly 10 years, assisted senior gang investigators in investigations of Asian crime, spoken to members of the community, to ACE members, members of other gangs, "persons in the area where they live," victims and witnesses of ACE crimes. This is, as the Attorney General notes, "precisely the sort [of testimony] approved" in *Gardeley* and *Sengpadychith*.
>
>In addition to his general expertise, Chan expressly based his opinion that burglary was the ACE's primary activity on documentary evidence of an admitted ACE member's November 1998 burglary conviction. The jury could also consider the shooting incident underlying the charged crimes-two counts of assault with a firearm-on the issue of the gang's primary activities. (*Sengpadychith*, *supra*, 26 Cal.4th at p. 320, 322-323.)
>
>We conclude there was sufficient "primary activity" evidence to support the jury's gang enhancement findings.

(Exh. 7 at 15-17).

Officer Chan gave expert testimony that a primary activity of the gang was burglary, which under California law is a proper method of proving the "primary activity" element. Given that, it was not unreasonable for the court of appeal to conclude that there was sufficient evidence to support the jury's conclusion. The rejections of these claims by the state appellate courts were not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

**5.    *Brady* Claim**

Petitioner contends that the prosecution should have informed the defense that in 1997 members of the gang to which the victim belonged, SOD, had come to Oakland to try to kill a Crips member named "Dumbo," who they believed had stabbed an SOD member in 1996, and at the time of the trial in this case were being prosecuted for instead killing a seven year-old child (Pet. at 6). There was evidence that petitioner's gang name was Dumbo, although he denied it (RT 870, 873, 1035). This issue was raised in the California Supreme Court in a state habeas petition filed by counsel (Exh. 16). The petition was denied without comment (Exh. 17).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good

12

1  faith or bad faith of the prosecution." *Id.* at 87.  "Evidence is material "if there is a reasonable
2  probability that, had the evidence been disclosed to the defense, the result of the proceeding
3  would have been different.  A 'reasonable probability' is a probability sufficient to undermine
4  confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "There are
5  three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the
6  accused, either because it is exculpatory, or because it is impeaching; that evidence must have
7  been suppressed by the State, either willfully or inadvertently; and prejudice must have
8  ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

9  "[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that
10 there is a reasonable probability that the suppressed evidence would have produced a different
11 verdict." *Id.* at 281.  It is not reasonably probable that disclosure of the information would have
12 produced a different verdict in this case.  For one thing, the impact of the information would
13 have been weakened by petitioner's testimony that he was not called "Dumbo," even though
14 there was other evidence was to the contrary.  For another, the impact of the information also
15 would have been reduced by the sheer passage of time, as the purported stabbing of an SOD
16 member by "Dumbo" occurred in 1996, four years before petitioner shot Scooby, and by the
17 fact that it already was clear to the jury from the testimony of the percipient witnesses that there
18 was animosity between petitioner and the SOD members.

19 But most importantly, petitioner's argument as to the materiality of the other
20 prosecution is dependent on a series of suppositions that have no support in the record.  He
21 contends that "it is highly likely" that "one or more" of the SOD witnesses knew of the 1996
22 stabbing involving a gang member named Dumbo, that it "reasonably appears" that "at least
23 some" of the SOD members had identified petitioner as Dumbo the night of the shooting, and
24 that "they likely believed" that he was the person who committed the 1996 stabbing (Pet.,
25 attached "Further Argument on Claims One Through Ten" at [unnumbered] 19-20).  This sort
26 of speculation is not sufficient to establish a reasonable probability that if the material had been
27 disclosed the outcome would have been different; that is, petitioner has not established that the
28 information in question was material.  *See Wood v. Bartholomew*, 516 U.S. 1, 6-8 (1995)

13

(whether a "reasonable probability" exists may not be based on mere speculation without adequate support); *see, e.g.*, *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (rejecting as speculative argument that withheld material might have led to some admissible evidence which might have been sufficiently favorable to meet the *Bagley* standard).

Information about the other prosecution was not material, so there was no *Brady* violation. The rejection of this claim in state court was not contrary to, or unreasonable application of, clearly established United States Supreme Court authority.

### 6. Ineffective Assistance of Counsel

Petitioner's claims two through six are that his counsel was ineffective in failing to discover the exculpatory evidence at issue in issue five; in failing to investigate and discover the arrest of a prosecution witness, which would have revealed useful impeachment evidence; in not moving to exclude two statements regarding his gang membership made by petitioner to a sheriff's deputy without *Miranda* warnings and without counsel; in failing to elicit certain testimony and in not objecting to certain testimony; and in closing argument.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must show: first, that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Ibid.* Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. A difference of opinion as to trial tactics does not constitute denial of effective assistance, *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available, *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984).

///

1    In his first ineffective assistance claim, petitioner contends that counsel was ineffective
2 in failing to discover the information at issue in his *Brady* claim, namely that members of the
3 gang to which the victim belonged, SOD, had in 1997 come to Oakland to try to kill a Crips
4 member named "Dumbo," who they believed had stabbed an SOD member in 1996, and were
5 being prosecuted for instead killing an innocent seven year-old child. Petitioner claims that this
6 information would have strengthened his self-defense argument by providing a motive for his
7 contention that the SOD members attacked him first.

8    As discussed in section one, petitioner denied being "Dumbo" (RT 1035), and his
9 counsel conceded on appeal that petitioner was in custody at the time of the initial stabbing in
10 Oakland, the one allegedly committed by "Dumbo," *see* Exh. 16 at 19 n.5. These points are not
11 as significant as the respondent seems to think, however, because of course the others involved
12 in the altercation with petitioner might have thought he was the person who committed the
13 stabbing, and thus have had reason to attack him, regardless of whether petitioner was Dumbo
14 or whether petitioner could have committed the 1996 stabbing. On the other hand, what does
15 matter a great deal is whether the others involved here thought that petitioner had committed the
16 1996 stabbing of their colleague. And as to that point, there is no evidence. In the absence of
17 any evidence that would have shown that the SOD members involved here thought petitioner
18 was guilty of the 1996 stabbing, petitioner has failed to show that counsel's failure to discover
19 the 1996 stabbing, the 1997 retaliation, and the prosecution for the 1997 retaliation, was
20 deficient performance or that the failure to carry out that investigation was prejudicial.

21    Petitioner's second ineffective assistance claim is that his counsel failed to investigate
22 and discover the arrest of a prosecution witness, Tungyio Sanlee, for drunken driving a month
23 before the shooting. Two prosecution witnesses, Nai Saephan and San Chiem Saehao, were in
24 the car with Sanlee, and another, John Saechao, came to the scene. Petitioner contends that at
25 trial three of these witnesses, Tungyio Sanlee, Nai Saephan and John Saechao, attempted to
26 minimize their level of acquaintance with the fourth, San Chiem Saehao, who was armed at the
27 event where the shooting took place. Petitioner's point is that if counsel had discovered the
28 arrest, he could have used the fact that they all were at the scene of Tungyio's arrest to attack

15

1    the credibility of their contentions that they barely knew each other, and to strengthen the
2    defense that the SOD members attacked petitioner.

3        The SOD witnesses admitted knowing San Chiem Saehao and having spent some time
4    with him (RT 298, 404-05, 370-71, 756, 753-54).  That they were together at the time of
5    Tungyio Sanlee's arrest thus is not directly inconsistent with their trial testimony, and would
6    have had no value in strengthening the defense theory that the SOD members started the affray.
7    Counsel's failure to discover this information was not deficient performance and his failure to
8    discover it was not prejudicial to petitioner.

9        Petitioner's third ineffectiveness claim is that counsel should have objected to the
10   prosecution's use of statements about his gang affiliation that petitioner gave a to a deputy, or
11   have moved prior to trial to exclude them.  The statements were made without *Miranda*
12   warnings and without a waiver of counsel.  *See Massiah v. United States*, 377 U.S. 201, 206
13   (1964) (Sixth Amendment violation to admit at trial defendant's statements that had been
14   "deliberately elicited from him after he had been indicted and in the absence of his counsel.").

15       Because the statements were used to impeach petitioner's testimony (RT 1100, 1106),
16   they would not have been excluded.  *See Harris v. New York*, 401 U.S. 222, 225 (1971)
17   (statements taken in violation of *Miranda* may be used to impeach the defendant's credibility
18   even though they are inadmissible as evidence of guilt); *United States v. Danielson,* 325 F.3d
19   1054, 1067 (9th Cir. 2003) (statements gathered in violation of a defendant's right to counsel
20   must be excluded from the government's case-in-chief, but are admissible to impeach
21   conflicting testimony by defendant) (citing *Michigan v. Harvey*, 494 U.S. 344, 349-53 (1990)).
22   It thus would have been futile for counsel to make the motion or objection petitioner suggests,
23   and counsel was not ineffective in failing to do so.  *See Juan H. v. Allen*, 408 F.3d 1262, 1273
24   (9th Cir. 2005) (trial counsel cannot have been ineffective for failing to raise a meritless
25   motion).

26       Petitioner also claims that counsel was ineffective in failing to introduce a statement
27   given police by Tungyio Sanlee, not objecting to a prosecution question, and not objecting to a
28   prosecution statement in closing argument that allegedly was not supported by the evidence.

16

1   One of the victim's SOD friends, Tungyio Sanlee, gave a statement to police right after
2   the shooting in which he said that "some of my friends know this guy [petitioner] as 'Dumbo'"
3   (Exh. 7 at 21). The statement was not introduced at trial. Petitioner contends that because at
4   trial all the SOD witnesses claimed not to know petitioner, this statement could have been used
5   for impeachment; he also contends that the statement could have been used to strengthen the
6   argument that the SOD members knew who petitioner was and intended to attack him.

7   As the court of appeal pointed out, Sanlee's statement did not identify who the other
8   friends were, so it would not necessarily impeach testimony of the witnesses who said they did
9   not know petitioner (*id*. at 22). Sanlee's testimony was that he had never "seen" petitioner
10  before the incident (RT 387), and Sanlee's statement to police about some of his friends
11  knowing petitioner as Dumbo did not indicate the basis for the remark. The statement was
12  taken two hours after the shooting and Sanlee might have learned petitioner's nickname in those
13  two hours, and in any event Sanlee's knowledge that some people knew petitioner as Dumbo
14  was not on its surface inconsistent with his never having seen petitioner. The statement would
15  have been of minimal or no value in impeaching Sanlee, and would have done little to bolster
16  the self-defense argument.

17  Because use of the statement would not have been effective impeachment nor would it
18  have added much to the defense case, counsel's failure to use this statement was not deficient
19  performance, and for the same reason petitioner was not prejudiced by the failure.

20  Petitioner also contends that counsel was ineffective in failing to object to a statement
21  by witness John Saechao. John Saechao was asked why he thought petitioner was already in
22  place with his gun out when the victim and his friends turned a corner, and answered "[s]o, it
23  was really planned out, I guess" (RT 333). The court of appeal explained that under California
24  law this was permissible lay opinion (Exh. 7 at 22). That holding is binding on this court. *See*
25  *Hicks*, 485 U.S. at 629-30 n.3. Because an objection would have been meritless, counsel's
26  failure to make it was not ineffective assistance. *See Juan H.*, 408 F.3d at 1273 (trial counsel
27  cannot have been ineffective for failing to raise a meritless motion).
28  ///

17

1    In closing argument the prosecutor said: "[n]one of the witnesses have really changed their testimony about what happened at the actual shooting from when they gave their statement to the police and when they testified at the preliminary hearing" (RT 1235-36). The witnesses' statements to the police and their testimony at the preliminary hearing were not in evidence, although as the court of appeal noted, "numerous portions" of the prior statements had been used to impeach them (Exh. 7 at 23). Petitioner contends that counsel was ineffective in failing to object.

The prosecutor admitted that his own witnesses had engaged in "various falsehoods" (Exh. 22-23). The court of appeal held that in making the statement upon which petitioner relies, the prosecutor was not vouching for the credibility of the witnesses, but rather was "trying to convince the jury that the inconsistencies in their statements[] were not really material" (Exh. 7 at 23). Reading the closing argument in context, it is clear that the court of appeal is correct that the prosecutor was not vouching that the witnesses were truthful people. But although this is true, it also is the case that the prosecutor was trying to convince the jury that the inconsistencies were not material by saying that the witnesses' statements as to the shooting itself were consistent with their statements to the police and at the preliminary examination, which were not in evidence.

It is improper vouching when a prosecutor suggests that information not presented to the jury supports the witness's testimony. *United States v. Young*, 470 U.S. 1, 7 n.3, 11-12 (1985). It seems likely that an objection pointing out that the prosecutor's argument about the police statements and the preliminary hearing testimony was based on matters not in evidence would have been sustained. On the other hand, whether to object during closing argument is the very essence of a tactical decision, the reference was a tiny one in a long closing argument, and even the prosecutor had admitted that his witnesses had lied as to some points. It was not deficient performance for counsel to let the remark pass. *See Strickland*, 466 U.S. at 689 (judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance).

18

Petitioner also has not shown prejudice as to this claim. *Id*. at 688. To do so he must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. Given that the reference to matters not in evidence was a minor one in a long closing, that the prosecutor had conceded his witnesses were not entirely truthful, and that the court instructed the jury that counsel's arguments were not evidence, petitioner could not have been prejudiced by counsel's failure to object.

Finally, petitioner contends that his counsel's closing argument was so poor that giving it constituted ineffective assistance. He characterizes the closing as "brief, disorganized, ineffectual and perfunctory"(Pet. attachment at 2). The court of appeal rejected this claim:

> "The decision of how to argue to the jury after the presentation of evidence is inherently tactical" ( *People v. Freeman* (1994) 8 Cal.4th 450, 498, and "[t]he effectiveness of an advocate's oral presentation is difficult to judge accurately from a written transcript" ( *Cudjo*, supra). We have carefully reviewed defense counsel's closing argument to the jury, and while it certainly might have been better, we are not persuaded that it fell below the standard of reasonably competent representation. Moreover, Cheo Pou has failed to establish that any deficiency in counsel's closing was prejudicial.

(Exh. 7 at 24-25).

The Court has reviewed counsel's closing argument (RT 1261-83), and agrees with the court of appeal that while it could have been better, it was not below the standard of reasonably competent representation. Moreover, the court of appeal's conclusion to that effect certainly was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

Petitioner's Sixth Amendment right to effective assistance of counsel was not violated. The state courts' rejections of these claims were not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September   29  , 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\SAECHAO112.RUL.wpd

19